**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**GULF POWER COMPANY,**

      **Plaintiff,**

v.                                              Case No. 3:06cv270/MCR

**COALSALES II, LLC
f/k/a PEABODY COALSALES COMPANY,**

      **Defendant.**
_____/

**O R D E R**

      In this action plaintiff Gulf Power Company ("plaintiff" or "Gulf Power") sues defendant Coalsales II, LLC ("defendant" or "Coalsales") for breach of contract. Presently before the court is Coalsales' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(3) for improper venue; alternatively, Coalsales seeks to transfer this matter to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).[1] Gulf Power has filed a response to Coalsales' motion.[2] For the reasons given below, the court DENIES Coalsales' motion in its entirety.

---

[1] Doc. 21; memorandum in support at doc. 24.

[2] Doc. 25.

## BACKGROUND

Gulf Power is a Florida corporation that maintains its principal place of business in Pensacola, Florida. The corporation, an investor-owned electric utility serving the Northwest Florida area, burns coal to generate electricity at its Crist Plant (Escambia County, Florida) and Smith Plant (Bay County, Florida) units. Coalsales is coal supplier who has furnished coal to Gulf Power since the 1970s. Coalsales is a Delaware limited liability company whose principal place of business is in St. Louis, Missouri; it does not maintain an office in Florida.

On May 12, 1994, Gulf Power and Coalsales' predecessor, Peabody Coalsales Company, entered into a Coal Supply Agreement ("CSA") pursuant to which Coalsales agreed to provide Gulf Power with up to 1.9 million tons of coal annually until December 31, 2007.[3] The parties amended the CSA on January 15, 1998; January 29, 2003; and May 20, 2005.[4] Coalsales describes the CSA as a "source agreement" which required it only to supply coal to Gulf Power that came from approved mines identified in the agreement or otherwise mutually agreed upon. Gulf Power disputes this characterization, contending the CSA has never been treated as a sole source agreement and that since 1994 other sources for coal have been approved and used.

In performing the CSA Coalsales supplied Gulf Power with coal that originated from the Millennium Portal of the Galatia Mine ("the Galatia Mine"), which is located in Galatia, Saline County, Illinois. Beginning in 2003 Coalsales notified Gulf Power that, due to adverse geologic conditions at the Galatia Mine that had resulted in nonpermanent force majeure events, it would not be able to fully satisfy its tonnage requirements under the CSA. Between February 1, 2003, and May 31, 2006, Gulf Power experienced shortfalls

---

[3] Over the years Gulf Power also occasionally purchased coal from Coalsales pursuant to a separate "right to supply" contract and "spot" agreements. These agreements are not at issue in this litigation.

[4] It appears to be undisputed that during the term of the CSA Peabody Coalsales Company was converted to the limited liability company Coalsales II, which assumed and performed Peabody Coalsales Company's obligations under the CSA. In this order, for the sake of simplicity, the court refers to the defendant only as Coalsales II.

Case No. 3:06cv270/MCR

of coal totaling 1,611,667 tons.[5] On January 23, 2006, Coalsales gave Gulf Power written notice of a permanent force majeure event at the Galatia Mine that required its closure. Coalsales took the position that the CSA named Galatia Mine as the sole source of the coal to be supplied to Gulf Power and thus the Mine's closure excused Coalsales from further performance of the CSA under the force majeure provisions contained in section 14. Gulf Power countered that the CSA is not a sole source agreement and thus, regardless of whether coal was available from the Galatia Mine, Coalsales was obligated to furnish it with coal from alternate sources.

The parties attempted unsuccessfully to negotiate a resolution. On June 21, 2006, Coalsales filed a complaint for declaratory relief in the United States District Court for the Southern District of Illinois; the following day Gulf Power filed the instant diversity action in this forum, alleging that Coalsales was in breach of contract for failing to supply coal as set forth in the CSA. Coalsales moved to stay this case, pending a decision in the Illinois case on the applicability of the "first-filed" rule. The court granted Coalsales' motion and also denied as moot Coalsales' first motion to dismiss; dismissal was without prejudice to refiling at such time as the stay might be lifted. Upon notice that the Illinois case had been dismissed, this court lifted its stay and Coalsales again moved to dismiss or, alternatively, to transfer the action.[6] The court conducted an evidentiary hearing on January 15, 2008, to resolve the personal jurisdiction and venue issues raised in this case. The matter is now ripe for review.

---

[5] Gulf Power also estimates shortfalls of 3,215,957 tons between June 1, 2006, and December 31, 2007. According to its complaint, Gulf Power has been damaged by Coalsales' failure to perform by having to purchase environmentally acceptable coal at market prices substantially higher than the prices called for under the CSA.

[6] In Case No. 06-cv-488-DRH, United States District Judge David R. Herndon found that the United States District Court for the Southern District of Illinois had personal jurisdiction over Gulf Power and thus he denied Gulf Power's motion to dismiss on this ground. Judge Herndon also denied Gulf Power's alternate motion to transfer to this forum, instead addressing Coalsales' motion to establish its right to proceed in Illinois. Finding that Coalsales' declaratory judgment action was obviated by the instant breach of contract action, Judge Herndon dismissed Coalsales' case.

# MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

<u>Legal Standard</u>

A federal district court sitting in diversity "may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." <u>Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.</u>, 288 F.3d 1264, 1269 (11th Cir. 2002). Thus, in deciding whether it may exercise jurisdiction over a nonresident defendant, a federal district court in Florida must first "determine whether the Florida long-arm statute provides a basis for personal jurisdiction. If so, then [it] must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment.'" <u>Sculptchair, Inc. v. Century Arts, Ltd.</u>, 94 F.3d 623, 626 (11th Cir. 1996) (citing <u>Robinson v. Giarmarco & Bill, P.C.</u>, 74 F3d 253, 256 (11th 1996)); <u>SEC v. Carrillo</u>, 115 F.3d 1540, 1542 (11th Cir. 1997).

Florida's long-arm statute authorizes courts to exercise specific personal jurisdiction pursuant to Fla. Sta. § 48.193(1). <u>Madara v. Hall</u>, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990). A court may exercise specific jurisdiction over a nonresident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state. <u>Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino</u>, 447 F.3d 1357, 1360 n. 3 (11th Cir. 2006) (citing <u>Consolidated Dev. Corp. v. Sherritt, Inc.</u>, 216 F.3d 1286, 1292 (11th Cir. 2000)). Specific jurisdiction requires some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state."[7] <u>Sun Trust Bank v. Sun Int'l Hotels, Ltd.</u>, 184 F.Supp.2d 1246, 1269 (S.D.Fla. 2001) (quoting <u>Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Charman</u>, 635 So.2d 79, 81 (Fla. 1st DCA 1994)) (internal quotation marks omitted). With respect to a defendant's business activities, specific jurisdiction will attach provided the defendant is conducting a business

---

[7] This requirement is often referred to as "connexity." <u>Sun Trust Bank v. Sun Int'l Hotels, Ltd.</u>, 184 F.Supp.2d 1246, 1270 (S.D.Fla. 2001) (citing <u>Bloom v. A.H. Pond Co., Inc.</u>, 519 F.Supp. 1162, 1168 (S.D.Fla.1981)).

Case No. 3:06cv270/MCR

or business venture in Florida either itself or through an agent. See § 48.193(1)(a).[8] In such instances the defendant's activities "considered collectively . . . [must] show a general course of business activity in the state for pecuniary benefit." Sculptchair, 94 F.3d at 627 (citing Dinsmore v. Martin Blumenthal Assocs. Inc., 314 So.2d 561, 564 (Fla. 1975)).

Once the court has determined that jurisdiction over a nonresident defendants exists under the long-arm statute, it must then decide whether it can exercise that jurisdiction under the Constitution.  Pursuant to this inquiry, which is primarily concerned with matters of due process, the court must first determine whether the defendant has sufficient minimum contacts with the state such that he should reasonably anticipate being sued there. Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998).  The court must also decide whether it is fair to require the defendant to defend the suit in the forum state.  See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1221 (11th Cir. 1999) (citing Int'l Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).  The minimum contacts requirement is satisfied if the defendant "purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." Achievers Unlimited, Inc., 710 So. 2d at 719.  In determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice, the court should consider such matters as the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. See Meier, 288 F.3d at 1276.

The Parties' Arguments

Coalsales argues that personal jurisdiction pursuant to § 48.193(1)(a) does not lie because it does not currently operate, conduct, engage in, or carry on a business or

---

[8] Section 48.193(1)(a) provides that jurisdiction over a nonresident exists if the nonresident has "operated, conducted, engaged in, or carried on a business or business venture in this state or has an office or agency in this state . . . ." Fla. Stat. § 48.193(1)(a).

Case No. 3:06cv270/MCR

business venture in Florida nor does it maintain an office here. Coalsales also submits that it does not have contacts with Florida sufficient to satisfy the requirements of due process. According to Coalsales, in addition to not currently engaging in business in Florida or maintaining an office here, the CSA was administered by Gulf Power's parent company, Southern Company, from Birmingham, Alabama; Gulf Power effectively or in fact took title to the coal supplied by Coalsales outside Florida; and for over ten years business contacts, telephone calls, and correspondence between the parties took place not in Florida but rather in Alabama, Missouri, and Illinois. Coalsales also contends that because under the CSA Gulf Power had the option of selecting other points of delivery within the Southern Electric System, including outside Florida, Coalsales never purposely availed itself to suit here. Additionally, Coalsales maintains that any interest Florida may have in accommodating its citizens in suits against nonresidents is not sufficient to establish personal jurisdiction over it in this case.

Gulf Power responds that Coalsales indeed has conducted a business or business venture in Florida: it solicited Gulf Power's lucrative business in Florida, maintained that business through numerous communications with Gulf Power personnel who were located in Florida, and retained title of all coal supplied to Gulf Power from January 1998 to January 2003 until its delivery in Florida. Moreover, according to Gulf Power, Coalsales' failure to deliver coal in accordance with the CSA is enough to confer specific personal jurisdiction because the agreement constitutes a substantial connection with Florida. Also, Gulf Power argues, the CSA contains a choice-of-law clause identifying Florida law which constitutes further evidence of Coalsales' purposeful invocation of the benefits and protections of this state. Finally, Gulf Power points to Florida's interest in this litigation. Gulf Power argues that its estimated damages of $77 million, which it incurred as a result of being forced to purchase coal on the spot market, could be passed along to its Northwest Florida customers.

Discussion

As noted in Suffolk Federal Credit Union v. Continental Ins. Co., 664 So.2d 1153 (Fla. 3d DCA 1995), § 48.193(1)(a) distinguishes between transacting "business" and

engaging in a "business venture." The <u>Suffolk</u> court observed that "the term 'business venture' is generally applied to one subject matter or undertaking while 'business' is broader in scope denoting a variety of subjects, transactions or undertakings." <u>Suffolk Federal Credit Union</u>, 664 So.2d at 1154 (citing <u>Matthews v. Matthews</u>, 122 So.2d 571, 573 (Fla. 2d DCA 1960)). A "business venture" can consist of a single project or transaction. <u>Atlantis Marina & Yacht Club, Inc. v. R & R Holdings, Inc.</u>, 766 So.2d 1163 (Fla. 3d DCA 2000).

The evidence in this case reflects that prior to executing the CSA in 1994 Coalsales representatives traveled to the Crist plant approximately thirteen times to negotiate the agreement and to oversee test burns of coal.[9] The visits were further intended to further strengthen Coalsales' business relationship with Gulf Power, which had existed since the 1970s and, through the CSA executed in 1994, was contemplated to continue at least through 2007. In November 1993 Coalsales president Richard Whiting also visited Pensacola to discuss issues related to the CSA. Additionally, over the term of the agreement – which the parties executed in Florida – Coalsales personnel frequently communicated in writing, by e-mail, and by telephone with Gulf Power personnel located in Pensacola regarding coal shipment schedules, coal quality, invoicing, payments, and other matters related to performance of the CSA.[10] Invoices for coal were forwarded by Coalsales to Gulf Power in Florida and were paid from Florida by Gulf Power.[11] Further, under the January 1998 amendment to the CSA, in effect until January 2003, Coalsales retained title until delivery in Florida of all coal that it supplied to Gulf Power. Coalsales representatives also came to Florida at least once in 2004 to participate in test burns

---

[9] Test burns were necessary to evaluate whether the coal proposed to be used satisfied certain criteria set forth in the CSA.

[10] Communications also took place between Coalsales personnel and Southern Company personnel in Birmingham, Alabama.

[11] Originally, Coalsales invoiced Gulf Power by sending paper statements through the mail, which Gulf Power paid by check; in recent years the parties have employed electronic invoicing and payment methods.

pursuant to the 1994 amendment.[12]  The court concludes that the totality of evidence adequately demonstrates that Gulf Power and Coalsales personnel "engaged in interstate travel, exchanged communications, and injected [a commodity] into interstate commerce to effectuate a business relationship. Both parties contemplated a business venture by their actions." Baker Electronics, Inc. v. Pentar Systems, Inc., 219 F.Supp.2d 1260, 1263 (M.D.Fla. 2002).  Accordingly, the court finds that Coalsales is amenable to the court's exercise of specific personal jurisdiction pursuant to § 48.193(1)(a).[13]

Next, the court finds that Coalsales had sufficient contacts with Florida such that it purposely availed itself of the privilege of conducting activities within Florida and should reasonably have anticipated being haled into court in this state.  In addition to the evidence previously discussed, the court recognizes that this lawsuit is a direct result of a contract which contemplated a substantial connection to Florida. McKee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.223 (1957) (stating that "]i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State").  Also, the CSA contains a choice-of-law clause which provides that the agreement shall be governed by and construed in accordance with the substantive laws of Florida.  This provision further supports the conclusion that Coalsales intended to invoke the benefits and protections afforded by Florida law.  See id., 471 U.S. at 481; Achievers Unlimited, Inc., 710 So. 2d at 719.  The court also finds that its exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  There is no evidence that

---

[12] The test burns also involved coal that was purchased under the right to supply agreement; as noted, the right to supply agreement is not at issue in this case.

[13] Section 48.193(1)(g) provides jurisdiction over any person "breaching a contract in this state by failing to perform acts required by the contract to be performed in this state."  The Eleventh Circuit has interpreted this section to "mean[ ] that there must exist a duty to perform an act in Florida; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1218 (11th Cir. 1999). See also Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc., 726 So.2d 313, 314 (Fla.Dist.Ct.App.1998).
   Herbert "Rusty" Ball, Gulf Power's fuel manager, testified that he was not aware of any acts that under the CSA that Coalsales was required to perform in Florida.  Based upon the court's reading of the CSA, and in light of Mr. Ball's concession, the court concludes that specific personal jurisdiction over Coalsales is not conferred pursuant to § 48.193(1)(g) because Coalsales had no duty under the CSA to perform an act in Florida.

Case No. 3:06cv270/MCR

Coalsales, which has its principal office in Missouri, would be any more burdened by having to defend this lawsuit in Florida than in its preferred forum of Illinois.  Even if Coalsales were inconvenienced to some extent, however, given modern means of transportation and communication the burden should be minimal.  Finally, Florida clearly has a compelling interest in adjudicating a dispute which could have significant implications for virtually all Northwest Florida residents as consumers of electricity. Burger King v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting that "[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors").

For all of foregoing reasons, the court concludes that it has specific personal jurisdiction over Coalsales in this case.[14]  Defendant's Rule 12(b)(2) motion is therefore denied.[15]

---

[14] A court may exercise general personal jurisdiction pursuant to Fla. Stat. § 48.193(2), when the suit does not arise out of the nonresident's contacts with Florida provided the nonresident is engaged in substantial and not isolated activity in the state. Stubbs, 447 F.3d at 1360 n. 3 (citing Meier, 288 F.3d at 1269).  Florida courts have interpreted "substantial and not isolated activity" to mean "continuous and systematic general business contact." Autonation, Inc. v. Whitlock, 276 F.Supp.2d 1258, 1262 (S.D.Fla. 2003) (citing Woods v. Nova Cos. Belize Ltd., 739 So.2d 617, 620 (Fla. 4th DCA 1999)).  These contacts must show a "general course of business activity in the State for pecuniary benefit." Stubbs, 447 F.3d at 1361 (citations and internal quotation marks omitted).  Although this is similar to the contact requirement for carrying on a business or business venture under §48.193(1)(a), for general jurisdiction to attach a defendant's business contacts with the forum "must be especially pervasive and substantial . . . ." General Cigar Holdings, Inc. v. Altadis, S.A., 205 F.Supp.2d 1335, 1343 (S.D.Fla. 2002).

In light of the instant ruling that specific jurisdiction is conferred, it is unnecessary for the court to consider whether general jurisdiction over Coalsales also exists or whether, as Gulf Power has suggested, there is any need for the parties to conduct further discovery on this issue. The court observes, however, that based on the evidence that has been presented thus far, it appears that general jurisdiction over Coalsales may also lie pursuant to § 48.193(2).

[15] The court notes Coalsales' reliance on Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162 (11th Cir. 2005), in its memorandum and its reference during the evidentiary hearing to certain personal jurisdiction cases decided by this court, apparently Crowe v. Paragon Relocation Resources, Inc., 3:06cv407/MCR (Order of August 16, 2007, document # 20); Lee's Famous Receipes, Inc. v. Fam-Res, Inc., Case No. 3:07cv24/MCR (Order of May 15, 2007, document # 55); Hysmith v. Welding Services, Inc., Case No. 3:04cv427/MCR (Order of December 2, 2005, document # 162); and Mold-Ex, Inc. v. Michigan Technical Representatives, Inc., 3:04cv307/MCR (Order of September 30, 2005, document # 34).  The instant case is distinguishable from the above cases.

First, Hysmith is a general jurisdiction case involving § 48.193(2). Also, in Lee's Famous Recipes the court found that specific jurisdiction existed over the defendant pursuant to § 48.193(1)(g), not § 48.193(1)(a).  Accordingly, neither case has application here.

The evidence in this case reflects that Coalsales does not maintain an office in Florida, apparently

## MOTION TO DISMISS FOR LACK OF VENUE

<u>Legal Standard</u>

Title 28 U.S.C. § 1391(a)(2), provides that "[a] civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The language of § 1391(a)(2) contemplates some cases in which venue will lie in two or more districts. <u>Jenkins Brick Co. v. Bremer</u>, 321 F.3d 1366, 1371 (11th Cir. 2003); Wright & Miller, <u>Federal Practice and Procedure</u> § 3806 ("it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred"). In assessing whether a "substantial part of the events or omissions giving rise to the claim occurred" in a particular judicial district, courts should consider "only those acts and omissions that have a close nexus to the wrong." <u>Jenkins Brick Co.</u> 321 F.3d at 1372. When "material acts or omissions within the forum bear a 'close nexus' to the

---

serves only three Florida clients, and obtains only a relatively small percentage of its overall revenue from those clients. These factors, while relevant in determining whether a defendant was carrying on business or business venture for the purposes of § 48.193(1)(a), are not dispositive. <u>See</u> <u>Horizon</u>, 421 F.3d at 1167. In this case, other factors weigh in favor of finding personal jurisdiction, including that Coalsales personnel traveled to Florida on numerous occasions – at least fifteen times prior to or during 1994 – with the express purpose of negotiating or signing the CSA, conducting test burns necessary to effectuate the CSA, and/or otherwise developing a business relationship with Gulf Power regarding the CSA . At least one subsequent visit for test burns also took place in 2004. Furthermore, it is significant that over the term of the agreement Coalsales personnel frequently communicated with Gulf Power personnel in Florida via telephone, email, and in writing in order to administer the CSA. Additionally, pursuant to the January 1998 amendment to the CSA, in effect until January 2003, Coalsales retained title of all coal that was delivered in Florida.

The degree of connexity present in this case was not present in <u>Crowe</u>, <u>Horizon</u>, or <u>Mold-Ex</u>. In <u>Crowe</u>, the court found there was no connexity whatsoever between the job the plaintiff said he was denied and defendant's business activities in Florida. In both <u>Horizon</u> and <u>Mold-Ex</u> the defendants' telephonic and electronic communications to Florida were found to be an insufficient connection. The total number of and the duration of time involved with the written, telephonic, and electronic communications in this case, however, far exceed those in <u>Horizon</u> or <u>Mold-Ex</u>. Moreover, the nature of the communications in this case pertains *directly* to the CSA, the breach of which is the subject of this dispute.

In short, unlike the previously cited cases, in the instant case there is adequate evidence of some "direct affiliation, nexus, or substantial connection between the cause of action and the [defendant's] activities within the state." <u>Sun Trust Bank</u>, 184 F.Supp.2d at 1269. The evidence fairly supports the conclusion that Gulf Power's breach of contract claim arose as a consequence of activities by Coalsales that may be characterized as "operating, conducting, engaging in, or carrying on a business or business venture" in Florida.

Case No. 3:06cv270/MCR

claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." <u>Daniel v. American Board of Emergency Medicine</u>, 428 F.3d 408, 433 (2d Cir.2005) (citing <u>Jenkins Brick Co.</u>, 321 F.3d at 1372). A plaintiff is not required to select the venue with "the most substantial nexus to the dispute"; it must simply choose a venue where a substantial part of the events giving rise to the claim occurred. <u>Morgan v. North Miss. Med. Ctr., Inc.</u>, 403 F.Supp.2d 1115, 1122 (S.D.Ala. 2005) (citations omitted). On a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of showing that venue in its chosen forum is proper. <u>Wai v. Rainbow Holdings</u>, 315 F.Supp.2d 1261, 1268 (S.D.Fla. 2004). <u>But</u> <u>see</u> <u>Barker v. New Energy Corp.</u>, 2006 WL 3391347 (S.D.Ga. 2006) (noting split in authority regarding which party bears the burden of proof on a motion to dismiss for improper venue but accepting majority view that favors placing the burden on plaintiff). In considering a motion under Rule 12(b)(3), a court accepts the facts in the plaintiff's complaint as true. <u>Wai</u>, 315 F.Supp.2d at 1268. A court may also "consider matters outside the pleadings if presented in proper form by the parties." <u>MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.</u>, 146 F.Supp.2d 1344, 1349 (S.D.Fla. 2001) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1364 (2d ed.1990)). Where there is a conflict between allegations in the complaint and evidence outside the pleadings, the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." <u>Wai</u>, 315 F.Supp.2d at 1268.

<u>Discussion</u>

According to Coalsales, venue is improper under 28 U.S.C.§ 1391(a)(2) because a substantial part of the events or omissions giving rise to Gulf Power's claim did not occur in Florida: Coalsales is not licensed to do business here, and it has not engaged in any substantive contacts with Florida regarding the performance or administration of the CSA. Gulf Power that Coalsales solicited its business in Florida, negotiated and administered the CSA here, communicated regularly with Gulf Power personnel in Florida, and sought and received payment for the coal it supplied to Gulf Power. As a substantial part of the events giving rise to its breach of contract claim in fact did occur here, Gulf Power contends, venue

is proper.

The court is satisfied that a substantial part of the events giving rise to Gulf Power's breach of contract claim occurred in Florida. The CSA was negotiated, signed, and – to a fairly significant degree – administered in Florida. Moreover, the CSA allegedly was breached by Coalsales' failure to supply coal to Gulf Power for use at its Crist Plant and Smith Plant, both in Florida.[16] While not all of the events giving rise to Gulf Power's claim may have occurred in Florida, "§ 1391(a)(2) does not limit venue to the place where all or most of the events giving rise to the claim occurred; the statute places venue in every district where a 'substantial part' of the events occurred." Waters Edge Living, LLC v. RSUI Indemnity Co., 2007 WL 1021359, *4 (N.D.Fla. 2007); see also Morgan, 403 F.Supp.2d at 1122. The court concludes that a substantial part of the events at issue occurred in the Northern District of Florida and therefore that venue is proper here. Accordingly, Coalsales' motion to dismiss pursuant to Rule 12(b)(3) is denied.

## MOTION TO TRANSFER

Legal Standard

A district court may transfer any case to any other district where the case originally may have been brought. 28 U.S.C. § 1404(a).[17] To transfer an action under section

---

[16] Although several courts have considered a defendant's contacts with the state for purposes of personal jurisdiction in deciding whether venue is proper, see, e.g., Ciena Corp. v. Jarrard, 203 F.3d 312, 318 (4th Cir. 2000); Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, OK, 245 F.Supp.2d 1248 (N.D.Ga. 2002); United States. Surgical Corp. v. Imagyn Medical Technologies, Inc., 25 F.Supp.2d 40 (D.Conn. 1998), the Eleventh Circuit has cautioned against employing such a narrow focus. Jenkins Brick Co., 321 F.3d at 1372 (disapproving of cases which engaged in a "'minimum contacts' personal jurisdiction analysis rather than [making] a proper venue analysis"). Thus, even though certain facts may be applicable to both a personal jurisdiction inquiry and a venue inquiry, the analytical lens through which those facts are viewed must be different.

[17] Section 1404(a) states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1406(a) provides: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As explained in Dubin v. United States, 380 F.2d 813, 816 (5th Cir. 1967), "[i]n substance, § 1404 is the statutory enactment of the doctrine of forum non conveniens tempered to allow transfer rather than dismissal. By contrast, § 1406 operates in cases where the first forum chosen is improper in the sense that the litigation may not proceed there." See also Ford v. Supreme Court of Florida, 2006 WL 1382075, *6 n. 15 (M.D.Fla. 2006) ("28 U.S.C. § 1406(a) . . . governs actions filed in an improper venue[ ] as opposed to § 1404(a), which governs actions filed in [a] permissible yet inconvenient venue)." In

1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties. See Robinson, 74 F.3d at 260.  The court's consideration of the § 1404(a) factors may include such criteria as the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency. See Tampa Bay Storm, Inc. v. Arena Football League, Inc., 932 F.Supp. 281, 282 (M.D.Fla. 1996). Because federal courts ordinarily accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that litigation there would be in the interest of justice.  See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (per curiam). Indeed, the Eleventh Circuit has instructed that district courts should be cautious in transferring actions, stating that "[t]he plaintiff's choice of forum should not be disturbed unless the movant can show that it is clearly outweighed by other considerations." Robinson, 74 F.3d at 260.

Discussion

 For the purpose of this discussion, the court shall assume that the instant action could have been brought in the Southern District of Illinois.[18] Accordingly, the court proceeds to consideration of whether the convenience of the parties and interests of justice favor transfer.

According to Coalsales, resolution of this matter will require examining the force majeure event.  Proceeding in the Southern District of Illinois would be convenient for local witnesses with knowledge of the event and it would readily permit access to the physical and documentary evidence located there.  Moreover, Coalsales contends, the public

---

the instant case, because the court has concluded that venue is properly laid in this district, the issue of transfer is informed by § 1404(a) rather than § 1406(a).

[18] Subject matter jurisdiction over the cause should exist in the Southern District of Illinois based upon diversity. 28 U.S.C. § 1332(a).  The court also assumes that the Southern District of Illinois would have personal jurisdiction over Gulf Power and that venue would be proper in Illinois.  There is no dispute that the amount in controversy exceeds $75,000 exclusive of interest and costs.

Case No. 3:06cv270/MCR

interest would best be served by transferring this matter to Illinois because the Galatia Mine is the situs of material events related to the dispute.  Also, given the litigation and discovery which have already taken place in Illinois, transfer would promote judicial economy and efficiency.  Gulf Power responds that, contrary to Coalsales' contention, the primary issue for determination is not whether <u>force majeure</u> conditions existed at the Galatia Mine but rather whether, even assuming <u>force majeure</u> events, Coalsales breached the CSA by failing to continue to supply coal to Gulf Power. According to Gulf Power, this determination involves a legal question, not factual questions, and thus the location of the witnesses and evidence is of minimal importance; to the extent additional factual discovery is required, it should center on contract negotiation and formation issues as to which Illinois has no connection.  Gulf Power also submits that judicial economy and the public interest are best served by retaining the action in the Northern District of Florida, for reasons pertaining to docket congestion, the CSA's choice-of-law provision naming Florida, and the potential impact on Florida consumers of electric power.

       The court finds that the <u>force majeure</u> event(s), even if they may require discovery, are not the central or threshold focus of this litigation; rather, the gravamen of this case is the interpretation of the CSA, <u>i.e.</u>, whether it was a sole source agreement pursuant to which Coalsales was only required to supply coal to Gulf Power from the Galatia Mine or whether Coalsales was required by the CSA's terms to supply coal from other sources.  To the extent discovery is required on this legal question, it appears that most of the witnesses and documents are located in Florida, Alabama, or Missouri – not Illinois.  Coalsales has failed to make an adequate showing that venue in the Southern District of Illinois would be materially more convenient for the witnesses than venue here in the Northern District of Florida.  Accordingly, the court finds that the convenience of witnesses does not favor transferring this case to the Southern District of Illinois. The court further concludes that Coalsales has not shown that the "interest of justice" consideration weighs in favor of transfer.  Pursuant to the choice-of-law provision in the CSA, the parties have agreed that the laws of Florida should be applied in this case.  Also, it appears that Florida consumers could be significantly impacted by the outcome of this matter.

Case No. 3:06cv270/MCR

For all of the foregoing reasons, the court finds that Coalsales has failed to meet its burden of showing the § 1404(a) factors favor transfer of this action to the Southern District of Illinois.  Coalsales' motion to transfer pursuant to 28 U.S.C. § 1406(a) is therefore DENIED.

## CONCLUSION

Having given careful consideration to the parties' contentions, the evidence, and the pertinent legal authority, the court concludes that defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) should be DENIED.  Coalsales' alternative motion to transfer pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) should also be DENIED.

Accordingly, it is ORDERED:

1.  Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) is DENIED.  Defendant's alternative motion to transfer pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) is also DENIED.

2.  An initial scheduling order shall be entered separately.

DONE and ORDERED this 27th day of February, 2008.

          *s/ M. Casey Rodgers*
          **M. CASEY RODGERS**
          **UNITED STATES DISTRICT JUDGE**