**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


**GULF POWER COMPANY,**

        **Plaintiff,**

v.                                                                         Case No. 3:06cv270/MCR/MD

**COALSALES II, L.L.C. f/k/a
PEABODY COALSALES COMPANY,**

        **Defendant.**

_____/

## ORDER

        Gulf Power Company ("Gulf Power") sued Coalsales II, LLC ("Coalsales") for breach of a multi-year coal supply agreement ("CSA"), seeking to recover $77,465,211 in damages it allegedly incurred after it was forced to purchase substitute coal to make up for deficiencies in the amount of coal Coalsales was obligated to supply under the CSA.  On September 30, 2009, the court granted Gulf Power's motion for partial summary judgment on liability (doc. 112).  The issue of Gulf Power's damages was tried to the court without a jury from February 9, 2010, to February 17, 2010.  Following trial, the court entered an order setting forth its findings of fact and conclusions of law, ultimately ruling that Gulf Power had failed to prove its damages claim (doc. 171).  Gulf Power then filed a Motion to Alter or Amend Judgment, or, Alternatively, for Relief from Judgment (doc 177), which is now pending before the court.  For the reasons set forth below, the court finds that Gulf Power's motion should be granted.

        Motions to alter or amend a final judgment under Rule 59(e) are granted sparingly and only where there is newly-discovered evidence or to correct manifest errors of law or fact upon which the judgment was based.  *See, e.g., Discrete Wireless, Inc. v. Coleman Technologies, Inc.*, No. 10-12495, 2011 WL 1251218, at *1 (11th Cir. April 5, 2011); *see also* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE

AND PROCEDURE § 2810.1 (2d ed. 1995). Even if errors have been committed, if the issues are at least arguable, such errors do not constitute "the sort of clear and obvious error which the interests of justice demand that [the court] correct." *American Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Moreover, a Rule 59(e) motion may not be used to re-litigate old matters or to present new arguments or evidence that could have been presented prior to judgment being entered. *See Discrete Wireless*, 2011 WL 1251218, at *1. The standard generally is the same with regard to a Rule 60(b) motion, which typically is granted only to correct a mistake of law or fact, *see* Fed. R. Civ. P. 60(b)(1); *Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir. 1992), but can prompt reconsideration for any "reason that justifies relief," *see* Fed. R. Civ. P. 60(b)(6).[1] Courts should bear in mind, however, that while Rule 60(b) "give[s] the court the power to set aside a judgment whose integrity is lacking . . . [it] *do[es] not* provide . . . a means for litigants to obtain the district court's reconsideration of the claims and defenses its judgment adjudicated." *Gonzalez v. Secretary for Dept. of Corrections*, 366 F.3d 1253, 1294-95 (11th Cir. 2004) (emphasis in original). Thus, Rule 60(b) may not be used to challenge mistakes of law that could have been raised on direct appeal, *see Rease v. Harvey*, 376 Fed. Appx. 920, 921 (11th Cir. 2010), or as "'a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that

---

[1] Fed. R. Civ. P. 60(b) provides, in full, as follows:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Gulf Power seeks relief under Rule 60(b)(1) and (6).

Case No. 3:06cv270/MCR/MD

previously failed,'" *see Gonzalez*, 366 F.3d at 1295 (quoting *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 247 F. Supp. 2d 1233, 1235 (D. Kan. 2003)).  Furthermore, "[i]t is well established . . . that relief under Rule 60(b)(6) 'is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.'" *Rease*, 376 Fed. Appx. at 921 (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)).[2]  "Under [Rule 60(b)(6)], '[t]he party seeking relief has the burden of showing that absent such relief, an "extreme" and "unexpected" hardship will result.'" *Id.* (quoting *Griffin*, 722 F.2d at 680). In other words, like Rule 59(e), "Rule 60(b)(6) should be only sparingly used and may not be employed simply to rescue a litigant from strategic choices that later turn out to be improvident."  *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007) (internal marks and citation omitted).  Although Gulf Power attempts to rehash a number of arguments already rejected by the court and raise others that should have been asserted prior to judgment, it also argues several mistakes of fact and law, one of which the court finds compels reconsideration of its prior order and judgment.

Because this matter pertains to the sale of goods, the Florida Uniform Commercial Code ("FUCC") applies.  As set forth more fully in the court's findings of fact and conclusions of law, a buyer has two options under the FUCC when a seller wrongfully fails to deliver goods under a contract: (1) it may make in good faith and without unreasonable delay a reasonable purchase of substitute goods, referred to as "cover," and recover as damages the difference between the cost of cover and the contract price, together with any incidental or consequential damages but less expenses saved as a result of the seller's breach, or (2) it may recover damages for non-delivery based on the difference between the market price at the time it learned of the seller's breach and the contract price, together with any incidental and consequential damages but less expenses saved as a result of the

---

[2] While unpublished opinions are not considered binding, they may be considered as persuasive authority.  *See* 11th Cir. R. 36-2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000).

breach.³  *See* Fla. Stat. §§ 672.711(1)(a), 672.712(1), and 672.713(1).  In this case, Gulf Power elected a cover remedy, which means Gulf Power was required to procure "reasonable like-kind substitute" goods to replace the coal Coalsales failed to supply under the CSA.  *See Martella v. Woods*, 715 F.2d 410, 413 (8th Cir. 1983).  Having elected a cover remedy, Gulf Power could not use cover to put itself in a better position than it would have been in had the contract been performed.  *See* Fla. Stat. § 671.106(1).  At trial, Coalsales argued that Gulf Power procured coal having a sulfur content considerably lower than that specified under the CSA and that Gulf Power's cover purchases, therefore, were unreasonable because the lower sulfur coal was not of a like-kind quality to the higher sulfur coal specified in the CSA.⁴  Based on the evidence at trial, the court agreed with Coalsales' position and found that Gulf Power was not entitled to a cover remedy because of the difference in quality between the substitute coal purchased and the coal called for under the CSA.  Additionally, because Gulf Power sought only cover damages and did not present any evidence of market price at trial, there was no evidentiary basis upon which the court could award Gulf Power damages under § 672.713.⁵

---

³ The market remedy provided in § 672.713 is "completely alternative to cover under the preceding section and applies only when and to the extent that the buyer has not covered."  Fla. Stat. § 672.713, cmt. 5.  In other words, if the buyer elects cover, "the cover remedy then becomes the mandatory damage measurement, and the buyer may not subsequently choose to have damages based on the market formula . . . ."  ANDERSON, DAMAGES UNDER THE UNIFORM COMMERCIAL CODE § 7:6.  In the event a buyer's substitute purchases are deemed unreasonable, however, the buyer may seek damages under § 672.713.  *See, e.g.,* Ray G. Rezner and Elyse M. Tish, *Basic UCC Skills 1990: Article 2, Buyer's and Seller's Remedies*, PRACTICING LAW INSTITUTE, Commercial Law and Practice Course Handbook Series, 540 PLI/Comm 199 (1990).

⁴ As the court explained in its findings of fact and conclusions of law, coal contains sulfur that combines with oxygen when the coal is burned, producing sulfur dioxide ("SO2").  State environmental agencies issue permits to utility companies that limit the amount of SO2 they may emit at their generating plants.  Utility companies receive a certain number of sulfur emissions allowances each year based on their allowed emissions.  A utility company must have an emissions allowance for each ton of SO2 emitted.  Lower sulfur coal is advantageous because it results in fewer sulfur emissions when burned.  Sulfur content is thus a significant factor in the purchase and pricing of coal in this country.

⁵ In fact, when counsel for Coalsales commented at the pre-trial conference that Gulf Power was proceeding solely under § 672.712 and not under § 672.713, in the alternative, counsel for Gulf Power remained silent.

Case No. 3:06cv270/MCR/MD

Gulf Power argues that the court erred in several respects in finding that it failed to prove its damages claim. Although Gulf Power does not concede that any of its cover purchases were unreasonable, Gulf Power urges the court to reconsider its reasonableness finding only with respect to its 2007 cover purchases and, at a minimum, award it damages based on those purchases. In support of its position, Gulf Power cites two mistakes it claims the court made that render the court's reasonableness determination erroneous with respect to Gulf Power's 2007 cover purchases. First, Gulf Power argues that the court misconstrued the sulfur values set forth in two documents cited in connection with the court's reasonableness determination and erroneously relied on those sulfur values in finding that Gulf Power had altered its coal procurement strategy in such a way that it no longer intended to purchase coal comparable to that provided for under the CSA. On review, the court agrees that it failed to correctly convert units of measurement which, when correctly calculated, reveal that the sulfur content of the referenced coal was actually higher than that called for under the CSA. As Coalsales points out, however, the documents referenced by Gulf Power are only two of a number of documents and other evidence cited by the court in its discussion of the reasonableness of Gulf Power's cover purchases. Indeed, the court cited the documents only as *confirmation* of Gulf Power's *otherwise well-documented* shift in strategy. Thus, while the court may have been mistaken with regard to the sulfur values set forth in those documents, the fact remains that Gulf Power's decision to purchase lower sulfur coal and abide by that decision when procuring substitute coal – despite the fact that it resulted in the purchase of coal significantly different than that called for under the CSA – is well documented in the record.[6] As a result, the court's error in failing to accurately convert units of measurement does not change its decision.[7]

---

[6] Curiously, while Gulf Power argues that the court erred in relying on those documents as evidence of its shift in coal procurement strategy, Gulf Power does not dispute that it implemented the change in strategy.

[7] Even if it did, Gulf Power can appeal the court's finding with regard to the reasonableness of its purchases.

Gulf Power also argues that the court's reasonableness determination hinged on its mistaken impression that Gulf Power purchased only 150,000 tons of high-sulfur Galatian coal in 2007 when, in fact, it purchased 1,200,000 tons of the Galatian coal. According to Gulf Power, its 2007 cover purchases consisted of a "Columbia/Galatia blend," which included 1,125,000 tons of Columbian (low sulfur) coal and 1,200,000 tons of Galatian (high sulfur) coal that, when blended, had a sulfur content identical to that called for under the CSA, rendering Gulf Power's 2007 cover purchases reasonable. On careful review of the record, the court agrees with Gulf Power that the court's previous conclusion that Gulf Power's 2007 cover purchases were not reasonable depended, in considerable part, on its factual finding that Gulf Power had purchased predominantly lower sulfur Columbian coal for that year. In determining the reasonableness of Gulf Power's cover purchases, the court looked to the purchases themselves, not the sulfur content achieved after combining them. Believing that the majority of cover coal Gulf Power purchased for 2007 consisted of low-sulfur import coal, the court found Gulf Power's 2007 cover purchases, as a whole, to be unreasonable. The court's reasoning was consistent with the approach taken by the parties at trial. Indeed, at trial, Gulf Power specified each cover purchase by month and then sought damages based on those purchases for each year Coalsales was obligated to deliver coal under the CSA.[8]  Neither party ever suggested that the court should consider awarding damages for only certain purchases during any given year or for fewer than all of the years remaining under the CSA and, based on the court's reasonableness determination, the court saw no reason to do so. However, in conducting another review of Gulf Power's 2007 cover purchases in connection with the present motion, the court finds that it committed a manifest error of fact in failing to appreciate the quantity of high sulfur Galatian coal Gulf Power purchased for 2007 and that such error seriously impacted the court's analysis with respect to the reasonableness of Gulf Power's 2007 cover purchases. Considering that Gulf Power purchased almost equal quantities

---

[8] Gulf Power made it clear that it designated shortfalls and corresponding cover purchases by month for the sole purpose of facilitating interest calculations.

of high-sulfur Galatian coal and low-sulfur Columbian coal for 2007 and then blended the two to achieve a coal with a sulfur content equivalent to that provided for under the CSA, the court finds that Gulf Power's 2007 cover purchases were reasonable. The court's conclusion is strengthened by the fact that Coalsales failed to demonstrate at trial the availability of a sufficient amount of coal having a sulfur content equivalent to that provided under the CSA for 2007 and, in fact, in 2003, provided Gulf Power with both Columbian and Galatian coal so that the sulfur content of the two coals, on balance, would equal that called for under the CSA.[9]

Having found that Gulf Power's 2007 cover purchases were reasonable, the court must now consider Gulf Power's damages based on those purchases. Again, when a party procures cover goods following a breach of contract, it may recover as damages the difference between the cost of the cover goods and the contract price, together with any incidental or consequential damages but less expenses saved as a result of the seller's breach. *See* Fla. Stat. § 672.712. It is clear under the applicable law that the expenses Gulf Power saved in connection with its purchase of lower sulfur coal must be deducted from its damages and that Gulf Power bears the burden of establishing that amount. *See* Fla. Stat. § 672.712; *see also Milwaukee Valve Co., Inc. v. Mishawaka Brass Mfg., Inc.*, 319 N.W.2d 885, 890 (Wis. 1982) (noting that "'[t]he fundamental idea in allowing damages for breach of contract is to put the plaintiff in as good a position financially as he would have been in but for the breach" and that the a buyer whose performance is excused as a result of a seller's breach must prove, as an element of its damages, savings accrued by non-completion of the contract); ANDERSON, *supra*, at § 8:23 ("Expenses saved are a component of the calculation of the buyer's direct damages, and thus the burden of their proof is on the buyer."); Rezner and Elyse, *supra* (noting that reducing a buyer's recovery

---

[9] In its motion, Gulf Power challenges the court's finding that it purchased lower sulfur coal when higher sulfur coal was available. This argument is rejected. Although Gulf Power contends there was insufficient evidence at trial from which the court could conclude that coal comparable to that called for under the CSA was available at the time Gulf Power made its cover purchases, Gulf Power acknowledges evidence that higher sulfur coal, in fact, was available.

Case No. 3:06cv270/MCR/MD

by the amount of expenses saved in consequence of the breach "is necessary to promote the desired result of placing the buyer in the position he would have been in had no breach occurred").[10]  Gulf Power argued strenuously at trial that it was not required to deduct expenses saved from its damages claim and thus introduced no such evidence.[11] Although, for purposes of the instant motion, the court may not consider evidence that could have been presented prior to the entry of judgment, *see Discrete Wireless,* 2011 WL 1251218, at *1; Fed. R. Civ. P. 60(b), the court may – in its discretion – re-open the record and receive additional evidence when it is apparent the plaintiff has suffered some degree of damages even though the plaintiff failed to prove them.  *See, e.g., National Papaya Co. v. Domain Indus.*, 592 F.2d 813 (5th Cir. 1979).[12]  It is clear from the evidence in this case that Gulf Power suffered damages as a result of Coalsales' breach of the CSA.  Although Gulf Power failed to procure reasonable, like-kind substitute coal for 2003 through 2006, Gulf Power's 2007 purchases were reasonable, and the court finds that Gulf Power should be afforded an opportunity to prove its damages based on those cover purchases.[13]

---

[10] In stark contrast to its position at trial, Gulf Power also argues in its motion that the court erred in failing to properly apply § 672.712 because it did not address expenses saved, "render[ing] meaningless the requirement in section 672.712(2) . . . that 'expenses saved in consequence of the seller's breach' be deducted from the aggrieved buyer's damages."  The court disagrees that it was required to consider expenses saved with respect to purchases it found unreasonable.  Indeed, to the extent the court found Gulf Power's cover purchases unreasonable, Gulf Power was not entitled to damages under § 672.712 and thus expenses saved was not an issue.  Gulf Power further argues that the court erred in finding that it bore the burden of establishing expenses saved.  This argument is improper as an obvious attempt to rehash an argument previously considered and rejected by the court.  *See Gonzalez*, 366 F.3d at 1295.

[11] In connection with the instant motion for reconsideration, Gulf Power has submitted the affidavit of H.R. Ball, Gulf Power's Fuel Manager, in which Ball testifies to Gulf Power's damages.  Although Ball calculates expenses saved for the years 2003 through 2006, he does not calculate expenses saved for 2007.  Gulf Power argues that, because the sulfur content of the blended 2007 cover coal met the CSA specifications, it saved no expenses as a result of its 2007 cover purchases.

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[13] It is not clear to the court that Gulf Power saved any expenses as a result of its 2007 cover purchases.  Nevertheless, for the reasons stated above, given the undisputed evidence in the record regarding the savings associated with low-sulfur coal and the fact that neither the quantities of the two coals

ACCORDINGLY, Gulf Power's Motion to Alter or Amend Judgment or, Alternatively, for Relief from Judgment (doc. 177) is GRANTED. The court will conduct an evidentiary hearing on Thursday, August 25, 2011, at 9:00 a.m. (CST), on the issue of Gulf Power's 2007 cover damages.

**DONE and ORDERED** this 29th day of July, 2011.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

comprising the blend nor the resulting SO2 emissions are set forth in the record, the court finds that the issue of expenses saved must be addressed before the court can determine Gulf Power's damages.

Case No. 3:06cv270/MCR/MD